MICHAEL J. HEYMAN
United States Attorney

AINSLEY MCNERNEY
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, AK 99513-7567
Phone: (907) 271-5071
Email: Ainsley.McNerney1@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>      vs.<br><br>CHARLES ERNEST EMMI AND THEODORE MICHAEL TURGEON,<br><br>                Defendants. | No. 3:25-cr-00038-SLG-MMS<br><br>COUNT 1<br>CONSPIRACY<br>   Vio. of 18 U.S.C. § 371<br><br>COUNT 2<br>LACEY ACT—FALSE LABELING OF WILDLIFE<br>   Vio. of 16 U.S.C. §§ 3372(d), 3373(d)(3)(A)(ii)<br><br>COUNTS 3-6<br>LACEY ACT—COMMERCIAL ACTIVITY IN ILLEGALLY TAKEN WILDLIFE<br>   Vio. of 16 U.S.C. §§ 3372(a)(2)(A) and 3373(d)(1)(B).<br><br>CRIMINAL FORFEITURE ALLEGATION<br>   16 U.S.C. § 3374(a)(2) & (d); 28 U.S.C. § 2461(c); and Rule 32.2(a) |

# INDICTMENT

The Grand Jury charges that:

# INTRODUCTORY ALLEGATIONS

At all times relevant to this Indictment:

1. Defendants CHARLES ERNEST EMMI (EMMI) and THEODORE MICHAEL TURGEON (TURGEON) were residents of Wasilla, Alaska.

2. EMMI and TURGEON formed The Rock Outfitters LLC in March 2021. Together, EMMI and TURGEON carried out the business of the LLC under several different names: "The Rock Transport and Outfitters," "The Rock Outfitters," and "The Rock Kodiak" (collectively, "THE ROCK").

3. In March 2021 EMMI and TURGEON jointly opened a business checking account for the LLC with Northrim Bank.

4. In January 2022, EMMI and TURGEON jointly signed an agreement with First Mortgage, Inc. to take out a promissory note for the purchase of M/V *Sound Choice*. They continue to pay their obligation to First Mortgage, Inc. from the LLC's business checking account.

5. In June 2021, THE ROCK applied for a transporter license for the LLC. EMMI and TURGEON submitted an application to the Alaska Department of Commerce's Big Game Commercial Services Board that listed EMMI and TURGEON as joint owners of the LLC. In May 2022, the Big Game Commercial Services Board denied THE ROCK's application.

6. In June 2022, THE ROCK again applied for a transporter license. This time, THE ROCK listed the business name as "The Rock Kodiak," and included EMMI as the

sole owner of the business. The Big Game Commercial Services Board approved the application and issued THE ROCK a transporter license.

7. THE ROCK's license is active through December 2025. Under Alaska Statute Title 8 Chapter 54.650, the transporter license allowed THE ROCK to provide transportation services and accommodations to big game hunters in the field at a permanent lodge, house, or cabin owned by THE ROCK or on a boat with permanent living quarters on salt water. It did not authorize THE ROCK to provide big game guiding services without holding the appropriate license.

8. At all times relevant, neither THE ROCK, EMMI, nor TURGEON held any licenses required by the State of Alaska to provide big game guiding services.

## RELEVANT FEDERAL LAW—THE LACEY ACT

9. The Lacey Act prohibits trafficking in wildlife, fish, or indigenous plants that were taken, possessed, transported, or sold in violation of a law or regulation, or making or using false records about them.

10. It is a violation of Section 3372(a)(2)(A) of the Lacey Act for any person to sell in interstate commerce guiding and outfitting services in violation of any law or regulation of any State.

11. Section 3372(c)(1) of the Lacey Act defines a sale of wildlife as a person who, for money or other consideration, offers or provides guiding, outfitting, or other services for the illegal taking, acquiring, receiving, transporting, or possessing of fish or wildlife.

12. Section 3372(d) of the Lacey Act makes it unlawful for any person to make or submit any false record of wildlife which is intended to be transported in interstate commerce.

RELEVANT STATE OF ALASKA LAW AND REGULATIONS

13. Alaska Statute Title 8, Chapter 54.790(9) provides the term "'guide" means to provide, for compensation or with the intent or with an agreement to receive compensation, services, equipment, or facilities to a big game hunter in the field by a person who accompanies or is present with the big game hunter in the field either personally or through an assistant. . . ." The statute further defines "services" to include contracting, stalking, pursuing, tackling, packing, preparing, salvaging, skinning, and using spotting scopes and firearms for the benefit of a hunter.

14. Alaska Statute Title 8, Chapter 54.790(2) provides the term "'big game" means brown bear, grizzly bear, caribou, moose, black bear, bison, Sitka blacktail deer, elk, mountain goat, musk-ox, and mountain or Dall sheep."

15. Alaska Statute Title 8, Chapter 54.720(1) makes it unlawful for a person licensed under the chapter to fail to promptly report "a violation of state or federal wildlife or game, guiding, or transportation services statute or regulation that the person reasonably believes was committed by a client or an employee of the person."

16. Alaska Statute Title 8, Chapter 54.720(4) makes it unlawful for a person who holds any class of guide or transporter license to "knowingly enter or remain on private, state, or federal land without prior authorization during the course of providing big game hunting services or transportation services."

17. Alaska Statute Title 8, Chapter 54.720(6) makes it unlawful for a person to "knowingly guide without having a current registered guide-outfitter, class-A assistant guide, or assistant guide license and a valid Alaska hunting license in actual possession."

18. Alaska Statute Title 8, Chapter 54.720(8)(A) makes it unlawful for any person licensed under the chapter to commit, aid, or permit the commission of a hunting violation under the chapter.

19. Alaska Statute Title 8, Chapter 54.720(9), (11) makes it unlawful for a person to knowingly guide without a registered guide-outfitter license, or knowingly outfit, provide outfitting services, or advertise as an outfitter of big game hunts.

20. Alaska Statute Title 8, Chapter 54.720(19) makes it unlawful for a person licensed as a transporter, or who provides transportation services under a transporter license, to "knowingly accompany or remain in the field with a big game hunter who is a client of the person."

## COUNT 1

21. Paragraphs 1 through 20 are re-alleged and fully reincorporated herein.

22. From on or about November 9, 2022, through on or about May 17, 2024, within the District of Alaska and elsewhere, the defendants, CHARLES ERNEST EMMI and THEODORE MICHAEL TURGEON, did knowingly combine, conspire, confederate, and agree with each other and with others known and unknown to the Grand Jury to violate Title 16 U.S.C. §§ 3372(a)(2)(A), and 3373(d)(1)(B), by the sale of wildlife in interstate commerce with a market value in excess of $350.00, which CHARLES ERNEST EMMI and THEODORE MICHAEL TURGEON knew had been sold in violation of the laws of

the State of Alaska, namely AS 08.54.720(1), (4), (6), (8)–(9), (11), and (19), in that neither CHARLES ERNEST EMMI and THEODORE MICHAEL TURGEON were guide-outfitters licensed by the state of Alaska.

## Object of the Conspiracy

23. It was the object of the conspiracy to profit from unlicensed guiding activity by offering competitively priced big game guide-outfitter services without obtaining a big game guide-outfitter license through the State of Alaska Department of Commerce's Big Game Commercial Services Board.

## Manner and Means of the Conspiracy

24. From on or about at least November 9, 2022, through on or about May 17, 2024, within the District of Alaska and elsewhere, EMMI and TURGEON conspired to provide guide-outfitter services for 2022 Sitka black-tailed deer (*Odocoileus hemionus sitkensis*), 2023 Sitka black-tailed deer, and 2024 black bear (*Ursus americanus*) hunts out of Cordova, Alaska. At all times relevant to this Indictment, neither EMMI nor TURGEON were licensed by the state of Alaska as a big game guide-outfitter.

25. As to the 2022 Sitka black-tailed deer hunting season, it was part of the conspiracy that EMMI and TURGEON, d/b/a THE ROCK, charged Client 1, Client 2, Client 3, and Client 4 $16,000.00 for transporter services to hunt waterfowl and Sitka black-tailed deer out of Cordova, Alaska. While on the hunt, TURGEON provided guide-outfitter services to Client 4, a resident of the state of Texas, when he was not licensed to do so by the state of Alaska. TURGEON assisted Client 4 in taking one Sitka black-tailed deer buck and one doe, by remaining in the field, spotting the deer, sighting the scope on

his rifle, and quartering and packing out the buck and doe. EMMI submitted false records to the State of Alaska Big Game Commercial Services Board in which THE ROCK failed to report Client 4's two Sitka black-tailed deer on a Transporter Activity Report (TAR) for that trip.

26. As to the 2023 Sitka black-tailed deer hunting season, it was part of the conspiracy that TURGEON, d/b/a THE ROCK, provided guide-outfitter services to Client 5, a resident of the state of Pennsylvania, when he was not licensed to do so by the state of Alaska. TURGEON assisted Client 5 in taking one Sitka black-tailed deer, by remaining in the field.

27. As to the 2024 black bear hunt, it was part of the conspiracy that EMMI and TURGEON, d/b/a THE ROCK, charged Client 6, Client 7, and Client 8 $13,500.00 to provide transporter services for a black bear hunt out of Cordova, Alaska. The three clients were residents of Arizona, South Carolina, and Oregon. While on the hunt, EMMI and TURGEON provided guide-outfitter services by spotting bears, directing the hunters when and where to shoot, and remaining in the field. This hunt resulted in the successful take of three black bears, one for each client.

Overt Acts

28. In furtherance of the conspiracy, and to affect its objects, CHARLES ERNEST EMMI and THEODORE MICHAEL TURGEON committed at least one of the following overt acts, among others, in the District of Alaska:

29. On a date unknown to the Grand Jury, but no later than November 9, 2022, EMMI and TURGEON d/b/a THE ROCK sold a $16,000.00 hunt to Client 1, Client 2,

Client 3, and Client 4. At all times relevant, Client 4 was a resident of Texas. EMMI and TURGEON provided guide-outfitter services on this hunt.

30. On a date unknown to the Grand Jury, but no later than November 22, 2022, TURGEON took Client 4 into the field and assisted Client 4 in spotting, stalking, and killing two Sitka black-tailed deer. TURGEON assisted Client 4 in packing the two deer out of the field.

31. On November 22, 2022, EMMI submitted a TAR for the November 2022 hunts under THE ROCK's transporter license. On the TAR, EMMI falsely reported that only Client 1 and Client 2 were clients on the trip. EMMI further falsely reported that only one Sitka black-tailed deer was taken on the November trip. EMMI failed to include Client 3 and Client 4 on the TAR. EMMI further failed to include Client 4's two Sitka black-tailed deer on the TAR.

32. On a date unknown to the Grand Jury, but no later than December 11, 2023, TURGEON accompanied Client 5, a resident of Pennsylvania, into the field to stalk and take a Sitka black-tailed deer. TURGEON directed Client 5 when and when not to fire his rifle.

33. From on or about May 13, 2024, through at least on or about May 17, 2024 EMMI and TURGEON, d/b/a THE ROCK, sold a $13,500.00 hunt to Client 6, Client 7, and Client 8, three non-resident hunters.

34. Throughout the May 2024 hunt, EMMI and TURGEON provided the following unlawful guiding services, among others: spotting black bear from the *Sound Choice* and the skiff, directing clients where to look for black bear, directing clients where

to offload for best position to stalk black bear, instructing clients how to begin a stalk after identifying a black bear, and remaining in the field.

35. On May 13, 2024, EMMI and TURGEON accompanied their clients into the field to spot black bear.

36. On May 14, 2024, EMMI and TURGEON spotted a black bear from the helm of the *Sound Choice*. EMMI and TURGEON directed their clients where to look for the black bear. EMMI transported the clients to a nearby beach and directed the clients where to offload to stalk the bear. Client 6, a resident of Arizona, successfully took a black bear.

37. On May 15, 2024, TURGEON spotted a black bear from the *Sound Choice* and told the clients that they spotted a bear. EMMI transported the clients to shore and identified the location of the bear on the beach. Client 8 successfully took a black bear.

38. On May 15, 2024, Client 7 attempted to take a black bear. TURGEON spotted a black bear from the *Sound Choice* and told the clients to prepare to hunt. TURGEON transported the clients to a beach and offloaded into the field with Client 6 and Client 7. TURGEON led Client 6 and Client 7 in the direction of a black bear. No bear was harvested. TURGEON recounted leading the stalk to EMMI when the hunters returned to the *Sound Choice*.

39. On May 15, 2024, TURGEON spotted a black bear from the wheelhouse of the *Sound Choice* and pointed it out to Client 6. While transporting the clients to the shore, EMMI drove the skiff close to the location of the bear to determine how close he could drop the clients off. Client 7 successfully took a black bear.

All of which is in violation of Title 18 U.S.C. § 371.

## COUNT 2

40. Paragraphs 1 through 12 are re-alleged and fully reincorporated herein.

41. On or about November 22, 2022, within the District of Alaska, the defendant, CHARLES ERNEST EMMI knowingly made and submitted a false record of wildlife, which had been, and was intended to be, transported in interstate and foreign commerce, to wit, from the State of Alaska to Texas, and sold, offered for sale, and committed an act with intent to sell such wildlife, which had a market value greater than $350.00. Specifically, EMMI falsely reported on the State of Alaska Transporter Activity Report (TAR) one Sitka black-tailed deer taken by either Client 1 or Client 2, both residents of Alaska, when in truth, Client 4, a resident of Texas, had taken at least two Sitka black-tailed deer on that hunt and transported them to Texas.

All of which is in violation of 16 U.S.C. §§ 3372(d) and 3373(d)(3)(A)(ii).

## COUNT 3

42. Paragraphs 1 through 20 are re-alleged and fully reincorporated herein.

43. From on or about November 9, 2022, through at least on or about November 22, 2022, within the District of Alaska and elsewhere, the defendants, CHARLES ERNEST EMMI and THEODORE MICHAEL TURGEON, did knowingly transport, sell, receive, acquire, and purchase in interstate commerce, wildlife with a market value in excess of $350.00, which CHARLES ERNEST EMMI and THEODORE MICHAEL TURGEON, knew was taken, possessed, transported, and sold in violation of the laws and regulations of the State of Alaska, namely, Alaska Statute 08.54.720(1), (6), (8)–(9), (11), and (19).

All of which is in violation of 16 U.S.C. §§ 3372(a)(2)(A) and 3373(d)(1)(B).

## COUNTS 4–6

44. Paragraphs 1 through 20 are re-alleged and fully reincorporated herein.

45. From on or about May 13, 2024, through at least on or about May 17, 2024, within the District of Alaska and elsewhere, the defendants, CHARLES ERNEST EMMI and THEODORE MICHAEL TURGEON, did knowingly transport, sell, receive, acquire, and purchase in interstate commerce, wildlife with a market value in excess of $350.00, which CHARLES ERNEST EMMI and THEODORE MICHAEL TURGEON, knew was taken, possessed, transported, and sold in violation of the laws and regulations of the State of Alaska, namely, Alaska Statute 08.54.720(1), (6), (8)–(9), (11), and (19).

| Count | Client | Residency | Value | Big Game |
|---|---|---|---|---|
| 4 | Client 6 | Arizona | $4,500.00 | Black Bear |
| 5 | Client 7 | South Carolina | $4,500.00 | Black Bear |
| 6 | Client 8 | Oregon | $4,500.00 | Black Bear |

All of which is in violation of 16 U.S.C. §§ 3372(a)(2)(A) and 3373(d)(1)(B).

## CRIMINAL FORFEITURE ALLEGATION

The allegations contained in Counts 2–6 of this Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeiture pursuant to 16 U.S.C. § 3374(a)(2) &(d); 28 U.S.C. § 2461(c); and Rule 32.2(a) of the Federal Rules of Criminal Procedure.

Upon conviction of Counts 2–6 of this Indictment, the defendants, shall forfeit to the United States pursuant to 16 U.S.C. § 3374(a)(2) & (d) and 28 U.S.C. § 2461(c), any

vessels, vehicles, aircraft, and other equipment used to aid in the importing, exporting, transporting, selling, receiving, acquiring, and purchasing of wildlife involved in the commission of the offense, including, but not limited to:

1. Firearm and scope used on the November 2022 guided hunt with Client 4;

2. The 1986 54.5-foot vessel *Sound Choice*, Primary Vessel No. 904222

All pursuant to 16 U.S.C. § 3374(a)(2) & (d); 28 U.S.C. § 2461(c); and Rule 32.2(a) of the Federal Rules of Criminal Procedure.

A TRUE BILL

s/ Grand Jury Foreperson
GRAND JURY FOREPERSON

s/ Ainsley McNerney
AINSLEY MCNERNEY
Assistant U.S. Attorney
United States of America

s/ Michael J. Heyman
MICHAEL J. HEYMAN
United States Attorney

Date: 5/20/25